IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CYNTHIA TORRES-HARRIS,

              Plaintiff,

v.                                            Civ. No.  08-729 JCH/GBW

STATE OF NEW MEXICO,
New Mexico Department of Transportation;

ALVIN DOMINGUEZ,
Individually and in his Official Capacity
As District Engineer, District 1, New Mexico
Department of Transportation;

HAROLD LOVE,
Individually and in his Official Capacity
As Assistant District Engineer, District 1, New Mexico
Department of Transportation;

and

PAUL GARCIA,
Individually and in his Official Capacity
As Supervisor, District 1, New Mexico
Department of Transportation;

              Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants State of New Mexico, Alvin Dominguez, and Harold Loves' *Motion for Partial Summary Judgment on Plaintiff's Retaliatory Discharge Claims*, filed January 22, 2010 [Doc. 70]; Defendant Paul Garcia's *Motion for Partial Summary Judgment on Counts II and III of Plaintiff's Complaint*, filed January 22, 2010 [Doc. 71]; Defendant Paul Garcia's *Motion to Dismiss Count VI of Plaintiff's Complaint*, filed January

22, 2010 [Doc. 72]; and Defendants State of New Mexico, Alvin Dominguez, and Harold Loves' *Motion for Partial Summary Judgment on Plaintiff's Title VII and 42 U.S.C. § 1983 Claims*, filed January 22, 2010 [Doc. 73].[1] In her response to Defendants' *Motion for Summary Judgement on Plaintiff's Title VII and 42 U.S.C. § 1983 Claims* [Doc. 85], Plaintiff stipulated to dismissal of her Title VII claims (Counts II and V), her conspiracy claim (Count VI), and her Section 1983 claims against Defendants Dominguez, Love, and Garcia in their official capacities.  Thus, the Court need only address Count IV against the State of New Mexico and Counts III, VII, and VIII against the defendants in their individual capacities.  Defendants did not move for summary judgment on Count I, and the Court will therefore not address that count.  The Court, having considered the motions, briefs, exhibits, and relevant law, and being otherwise fully informed, finds that each of Defendants' motions should be granted.

## BACKGROUND

This case arises from Plaintiff's claims of sexual harassment and retaliatory discharge under both federal and state law.  The New Mexico Department of Transportation ("DOT") hired Plaintiff in February of 2005 and assigned her to a clerical position at the office of the Williamsburg Patrol, near Truth or Consequences, New Mexico.  Plaintiff contends that, while she was employed by DOT, Defendant Paul Garcia, a fellow DOT employee, sexually harassed her and that she was wrongfully terminated from her employment in retaliation for having complained about the harassment.

---

[1] Defendant Garcia joined in both motions for partial summary judgment filed by the other defendants [Docs. 70 and 73].  *See* Docs. 74 and 75.  Defendants Dominguez and Love also joined in Defendant Garcia's *Motion to Dismiss Count VI of Plaintiff's Complaint* [Doc. 72]. *See* Doc. 76.

A confrontation at a bar between Plaintiff and Defendant Garcia, and its aftermath, set the events of this case in motion. On September 13, 2006, Plaintiff was drinking with friends at Rocky's Bar in Truth or Consequences. Also present that evening was Defendant Garcia, who was drinking with his wife and other friends in a separate group from Plaintiff. This particular evening at Rocky's was "ladies' night," enabling women to drink for free. Apparently as the result of a bet, Defendant Garcia put on a skirt kept behind the bar and had his wife apply makeup to him, in an attempt to obtain free drinks as a "lady." Plaintiff, who does not dispute that she was drinking heavily that evening, taunted Defendant Garcia for wearing the skirt, repeatedly calling him a "faggot" and other names. At the request of Defendant Garcia's wife, who was uncomfortable about the confrontation, Defendant Garcia and his wife left the bar. Sometime after Defendant Garcia and his wife left the bar, Defendant Garcia's sister, Amy Lara, approached Plaintiff and confronted her over the way she had treated Ms. Lara's brother. Ms. Lara allegedly punched Plaintiff in the chest. After this incident, Plaintiff was restrained by her companions, and then left the bar.

When Defendant Garcia and his wife arrived home, they allegedly found a threatening message from Plaintiff on their home answering machine. According to Ms. Garcia, and undisputed by Plaintiff, the message contained threats by Plaintiff stating that she was going to kill Defendant Garcia, Ms. Garcia, and Defendant Garcia's sister. According to a police report of the incident, Ms. Garcia then received another voice message from Plaintiff later that night stating that Plaintiff was going to cut Ms. Garcia's throat the next time Defendant Garcia's sister said anything. Ms. Garcia called the police at 2:30 am on September 14, 2006, to file a report in reference to these threatening calls.

Early in the morning of September 14, 2006, Defendant Garcia received a voice mail from Plaintiff on his state-assigned cell phone. The message stated: "Hey you big old faggot! Next time your f*****g goddamn sister threatens me, I'm going to f*****g cut your throat and hers! You better put a ring on your goddamn motherf*****g sister or I'll f*****g sue you! Got it?!"

In addition to the voice mails, Defendant Garcia also received several text messages on his state-issued cell phone that had been sent from Plaintiff's phone.[2] The first one was received at 10:01 p.m. on September 13, 2006, and stated: "You are the BIGGEST FAG I HAVE EVER SEEN. YOU ARE A F*****G IDIOT." The next one was received on September 14, 2006, at 2:22 a.m. and stated: "HEY FAG YOUR ARE DISGUSTING FAG YOU TELL UR WHORE WIFE AND YOUR WHORE SISTER WHO BEGGED ME 2 GIVF HER MY baby 2 her trash asp? Tried 2 kic?" A follow-on text was received at the same time, stating: "k my ass. FAG YOU DON'T EVEN NO WHATS U ARE IN FOR. YOU ARE PATHDICK." At 4:35 a.m. the same morning, Defendant Garcia received another text stating: "The next time youre threatens me I WILL DEFEND MY SELF AS NECESSARY AND THE DUMB LITTLE TRASH BITCH WILL BE IN JAIL. YVETTE BETTER HAVE LIKELD HE?" A follow-on text was received at the same time, stating: "R JOB AT THE VET CENTER CAUSE SHE WILL NEVFR HAVE A JOB LIKE THAT AGAIN."

---

[2] Plaintiff does not dispute having left voice messages for either Ms. Garcia or Defendant Garcia the night and early morning of September 13 and 14, 2006. At her deposition, she contended that she did not recall sending the text messages, but does not dispute that they were sent from her phone to Defendant Garcia's phone. *See* Deposition of Cynthia Torres-Harris, attached as Ex. A. to Doc. 70, at 187:6-188:5; 192:19-193:3.

On September 14, 2006, Plaintiff voluntarily went to the Truth or Consequences Police Department to make a statement regarding the incident of the previous night.  She wrote a statement documenting "[e]vents leading to the incident on 9-13-06."  *See* Police Statement, attached as Ex. B. to Doc. 70, at 2.  Plaintiff's statement indicated that she called Defendant Garcia names because she was disgusted by the fact that he wore a skirt, and detailed the manner in which Defendant Garcia's sister punched her.  The statement also indicated that she and Plaintiff had "been seeing each other for about 2 ½ months," and that during the time they had seen each other, they had "been thru (sic) a lot."[3]  *Id*. at 3.  Plaintiff indicated her anger that Defendant Garcia would send someone to physically hurt her, and wrote that anything she said or texted "was just out of spite and total confusion as to why during the day he was being all Loving-Normal, and because I called him a fag--now he was wanting me to get physically hurt."  *Id*.  Her explanation concluded: "I sent him or her TXT messages because that, I guess was my was of hurting him – so that she (his wife) would really know what was going on, and he wouldn't be acting like it was all me chasing him – He has hidden the entire affair and since he had his sister...come after me I was just wanting his wife to realize that [Defendant Garcia] hasn't been honest with her for the past few months."  *Id*.

---

[3] Plaintiff has denied that she and Defendant Garcia had an extra-marital affair at any point.  *See* Plaintiff's Responses to Defendant State of New Mexico's Request for Admissions, attached as Ex. C to Doc. 70, at 3 ¶ 8 and at 6 ¶ 19.  For purposes of deciding these motions for summary judgment, the Court views the evidence and makes all inferences in the light most favorable to Plaintiff.  Ultimately, as discussed later in this opinion, whether or not Plaintiff and Defendant Garcia ever had a consensual relationship is not material, because Plaintiff's case fails if Defendant Garcia did not supervise her or exercise state authority over her and if Defendant Dominguez, who ultimately fired her, had no notice of the alleged harassment or her complaint.

On Friday, September 15, Defendant Garcia reported the threatening text and voice messages to the DOT's District Office. The DOT launched a Threat Assessment Team ("TAT") to investigate the threats. Mark Castillo served as the Occupational and Health Safety Supervisor for District I at that time, and he participated in the investigation, recorded the facts developed during the investigation, and submitted the results of the investigation to management. *See* Report on Incident, attached as Ex. H. to Doc. 70; Deposition of Mark Castillo, attached as Ex. I to Doc. 70, at 30:12-31:6. The TAT interviewed Defendant Garcia on September 18, 2006, and conducted separate interviews with Plaintiff and her husband the following day. Plaintiff did not provide a copy of her police statement to the TAT, nor did she inform the team that she had submitted a statement to the police. At the conclusion of the TAT's interview with Plaintiff, she was informed that she was being placed on administrative leave pending the outcome of the investigation. It was only at that point, following the conclusion of the interviews and the investigation, that Plaintiff allegedly mentioned for the first time that she had been sexually harassed by Defendant Garcia.[4] Plaintiff's allegation of sexual harassment was not included in the written report that Mr. Castillo submitted to management.

---

[4] Defendants point out that only one of the six members of the TAT, Mr. Castillo, recalls Plaintiff making any reference to sexual harassment following the conclusion of the interview, and that Mr. Castillo is pursuing his own employment claim against the DOT and is represented in that matter by Plaintiff's attorney. Regardless, the Court, in the context of evaluating the summary judgment motions, takes the existence of Plaintiff's complaint of sexual harassment at the conclusion of her interview as having been established. However, it is undisputed that Mr. Castillo did not include any reference to the harassment claim in his report on the incident, and also that Plaintiff did not complain about sexual harassment by Defendant Garcia at any time prior to being placed on administrative leave on September 19, 2006. *See* Defendants' Undisputed Material Facts no. 1 in Doc. 70 at 5; Plaintiff's Deposition, attached as Ex. A to Doc. 70, at 87:16-88:17.

Following the conclusion of the TAT investigation, the matter was submitted to the District Engineer for District I, Defendant Dominguez.  Defendant Dominguez, who was not present at any of the TAT interviews, was the person who made the decision to terminate Plaintiff effective November 1, 2006.  The reason given to Plaintiff for her termination was her failure to adhere to the standard of conduct expected of her as a public servant for violating the DOT rules against workplace violence and the code of conduct, based on the threats that she sent.  *See* Notice of Contemplated Action, attached as Ex. 4 to Doc. 71.  Plaintiff subsequently appealed her termination to the New Mexico State Personnel Board, and a hearing on her case was conducted by an Administrative Law Judge on April 24, 2007.  On June 25, 2007, the Administrative Law Judge concluded that Plaintiff had been afforded procedural due process, and that her termination for violation of the Department's code of conduct was not arbitrary and capricious and was supported by just cause.  However, for reasons not in evidence before this Court, on November 9, 2007, the State Personnel Board reversed the conclusion of the Administrative Law Judge, ordered that Plaintiff be suspended without pay for 30 days, and ordered that she be reinstated after that time.

On December 21, 2006, Plaintiff filed a Notice of Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") based on Title VII of the Civil Rights Act, claiming that she had been subject to sex discrimination and retaliation.  She claimed that, on one occasion, Defendant Garcia had pushed her against a truck and tried to kiss her, that he had once yelled at her and called her a "whore," and that he had frequently sent her sexually explicit text messages.  On July 11, 2007, the EEOC issued its Dismissal and Notice of Rights to Plaintiff.  The State of New Mexico Department of Workforce Solutions issued its Order of Non-

7

determination on May 6, 2008. On August 5, 2008, Plaintiff filed her Complaint in this matter. Plaintiff filed an Amended Complaint [Doc. 50] on August 18, 2009. Plaintiff's Amended Complaint states the following claims: Sexual Harassment Contrary to the New Mexico Human Rights Act (Count I); Sexual Harassment Contrary to Title VII of the Civil Rights Act of 1964 (Count II); Denial of Equal Protection (Count III); Retaliation in Violation of the New Mexico Human Rights Act (Count IV); Retaliation in Violation of the Civil Rights Act of 1964 (Count V); Conspiracy and Retaliation in Violation of 42 U.S.C. §§ 1983 and 1985 (Count IV); New Mexico Common Law Tort of Retaliatory Discharge (Count VII); and Punitive Damages Against All Individual Defendants (Count VIII).

## LEGAL STANDARD

Summary judgment is appropriate if "the record contains no evidence of a genuine issue of material fact and demonstrates that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 247 (1986); *Woodman v. Runyon*, 132 F.3d 1330, 1337 (10th Cir. 1997); Fed. R. Civ. P. 56(c). The Court views the record and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 484 (10th Cir. 1995). The moving party has the initial burden of showing there is no genuine issue of material fact. *Anderson*, 477 U.S. at 256. Once the moving party has met its burden, the non-moving party must do more than merely show that there is some doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party may not rest on mere allegations or denials of the pleadings, but must set forth specific facts showing a genuine issue for trial. *Anderson*, 477 U.S. at 248, 256. Although the Court views the evidence and draws all inferences

in the light most favorable to the party opposing summary judgment, that party still "must identify sufficient evidence which would require submission of the case to a jury." *Mares v. ConAgra Poultry Co.*, 971 F.2d 492, 494 (10th Cir. 1992). Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. *Anderson*, 477 U.S. at 248. Simple "[s]peculation or hunches admidst rumor and innuendo will not suffice." *Maestas v. Segura*, 416 F.3d 1182, 1189 (10th Cir. 2005).

## ANALYSIS

### A. Retaliatory Discharge

Plaintiff has alleged retaliatory discharge as the basis for one of her claims under the New Mexico Human Rights Act ("NMHRA") (Count IV) and a claim based on state common law (Count VII). Plaintiff also cited retaliatory discharge as the basis for one of her Title VII claims (Count V) and her conspiracy claim (Count VI), but she has stipulated to dismissal of those claims. *See* Doc. 85 at 5 and 7. Although Plaintiff dropped her Title VII claim, the Court analyzes a retaliation claim brought under the NMHRA using the same framework as it would use to analyze a Title VII claim. *See MacKenzie v. City and County of Denver*, 414 F.3d 1266, 1279 (10th Cir. 2005). Specifically, the Court must analyze Plaintiff's claim under the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), and its progeny. *See MacKenzie*, 414 F.3d at 1279. Under the *McDonnell Douglas* framework, a plaintiff must initially establish a prima facie case of retaliation. *See McDonnell Douglas,* 411 U.S. at 802. If the plaintiff can establish a prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *See id*. If the defendant meets this burden, summary judgment is warranted unless the employee can show

9

there is a genuine issue of material fact as to whether the proffered reasons are pretextual.  *See id*. at 804.  Because, in this case, Plaintiff has failed to meet her burden to establish a prima facie case of retaliation, the Court need not analyze the second and third prongs of the *McDonnell Douglas* framework.

In order to establish a prima facie case of retaliation under the NMHRA or Title VII, a plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) she was subject to adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action.  *See Jeffries v. Dep't of Soc. & Rehab.* Servs., 147 F.3d 1220, 1231 (10th Cir. 1998); *Gonzales v. New Mexico Dep't of Health*, 129 N.M. 586, 594 (2000).  Plaintiff engaged in a protected activity by reporting Defendant Garcia's alleged sexual harassment on September 19, 2006, and she was subject to an adverse employment action by being terminated effective November 1, 2006.  However, Plaintiff has failed to come forward with evidence to create a triable question of fact on whether a causal connection existed between her report of sexual harassment and her termination.

Failure to demonstrate a causal connection between the protected activity and an adverse employment action warrants summary judgment on a retaliation claim.  *See Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993).  In order to meet the causal connection element of a prima facie retaliation claim, the plaintiff must "show that the employer's motive for taking adverse action was its desire to retaliate for the protected activity."  *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2003).  If the person who took the adverse employment action against a plaintiff was unaware of the plaintiff's protected conduct, it logically follows that no causation can be established.  As recognized by the Tenth Circuit, in order "to establish a 'causal

connection,' plaintiff must show that the individual who took adverse action against [her] knew of the employee's protected activity." *Williams*, 983 F.2d at 181.

It is undisputed that Defendant Dominguez made the decision to terminate Plaintiff's employment. *See* Defendants' Undisputed Material Fact 3, Doc. 70 at 5; Plaintiff's Response to Defendants' Statement of Material Fact 3, Doc. 81 at 3. Defendant Dominguez terminated Plaintiff's employment on November 1, 2006, but Plaintiff did not file her claim of sexual harassment with the EEOC until December 21, 2006. Defendant Dominguez provided an affidavit in which he attests that he did not learn of Plaintiff's claim that Defendant Garcia had sexually harassed her until after she filed her complaint with the EEOC. *See* Affidavit of Alvin Dominguez, attached as Ex. F to Doc. 70, at ¶ 12. Plaintiff has not provided any evidence to counter Defendant Dominguez's sworn statement that he was not aware of her claim of harassment at the time that he terminated her employment. It is undisputed that Defendant Dominguez was not present at the TAT interview during which Plaintiff allegedly disclosed her claim of harassment, that Plaintiff had no direct communication with Defendant Dominguez concerning her claim of harassment, that Mr. Castillo's report on Plaintiff's threats (on which Defendant Dominguez allegedly relied in terminating Plaintiff's employment) contained no mention of Plaintiff's claim of harassment, and that Plaintiff has no personal knowledge that Defendant Dominguez was informed that she made a claim of harassment during the TAT interview. *See* Defendants' Undisputed Material Facts 4, 5, and 7, Doc. 70 at 5-6; Plaintiff's Response to Defendants' Statement of Material Facts 4,5, and 7, Doc. 81 at 4; Plaintiff's Responses to Defendant Dominguez's Request for Admissions Nos. 3-6, attached as Ex. D. to Doc. 70.

Rather than countering Defendants' undisputed material facts by citation to admissible evidence of her own, Plaintiff attempts to create a dispute of material fact by reliance on unsupported allegations, speculation, and conclusory argument.  This is an improper basis on which to attempt to defeat summary judgment.  *See* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must...set out specific facts showing a genuine issue for trial); *Pinkerton v. Colo. Dep't of Transp.*, 563 F.3d 1052, 1061 (10th Cir. 2009) (providing "nothing other than speculation and counsel's argument to the contrary" is insufficient to defeat summary judgment); *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1198 n.6 (10th Cir. 2008) (stating that "mere conjecture" is insufficient to defeat summary judgment, and that specific facts are required).

Defendants presented several undisputed material facts, backed by citations to deposition transcripts and affidavits based on personal knowledge, purporting to demonstrate that Defendant Dominguez was unaware at the time he terminated her employment that Plaintiff had made a claim of sexual harassment.  *See* Defendants' Undisputed Material Facts 8-11, Doc. 70 at 6.  In response to this evidence, Plaintiff argues that, because Defendant Dominguez chose to send a representative to the Threat Assessment Team interviews in his stead, "[i]t is a fair inference that Defendant was informed of the goings on at those meetings and that inference supports Plaintiff's claim that the true reason she was terminated was in retaliation for her sexual harassment claim," rather than because she repeatedly threatened the lives of her co-worker and his family members.  Plaintiff's Response to Defendants' Statement of Material Facts 8-11, Doc.

81 at 4-5.  Plaintiff also contends that Defendant Dominguez "should be presumed" to have been informed of Plaintiff's claim.  *Id.* at 4, ¶ 6.

In the absence of any actual evidence, the Court will not "infer" or "presume" a fact that is directly contrary to the evidence provided in the form of Mr. Castillo's deposition testimony, Defendant Love's affidavit, and Defendant Dominguez's affidavit.  The only person at the TAT interview who now claims to have heard Plaintiff mention harassment, Mr. Castillo, admits that he never had any discussion with Defendant Dominguez concerning the information that he learned during his investigation.  *See* Deposition of Mark Castillo, attached as Ex. I to Doc 70, at 110:6-24.  Additionally, as Mr. Castillo's report did not include any mention of Plaintiff's claim of harassment, and as Mr. Castillo testified that he understood Plaintiff's claim of harassment to be referring only to the events of September 13, 2006, it is not clear that it would even be a logical inference to assume that he would mention anything about the harassment to Defendant Dominguez.  Having failed to demonstrate a causal connection between her claim of sexual harassment and the termination of her employment, Plaintiff has not shown a prima facie case of retaliation, and Count IV must therefore be dismissed.

Plaintiff correctly notes that the NMHRA is not the exclusive remedy for retaliatory termination in violation of New Mexico public policy, and she has therefore also brought a claim for common law retaliatory discharge.  However, for same reason her NMHRA claim fails, so to does her common law claim.  In order to prevail on a claim for common law retaliatory discharge, a plaintiff "must demonstrate that [she] was discharged because [she] performed an act that public policy has authorized or would encourage, or because [she] refused to do something required of [her] by [her] employer that public policy would condemn."  *Chavez v.*

*Manville Prods. Corp.*, 108 N.M. 643, 647 (1989).  Certainly, the reporting of sexual harassment is an act that public policy would authorize and encourage.  However, without showing knowledge of her claim on the part of Defendant Dominguez, Plaintiff is unable to demonstrate a causal connection between the act encouraged by public policy and her termination.  Claim VII must therefore be dismissed as well.

    B.  Equal Protection

Plaintiff's Equal Protection claim against Defendant Garcia in his individual capacity is two-fold, first contending that he violated her right to Equal Protection when he harassed her, and then claiming that he again violated her rights in encouraging her wrongful termination. Plaintiff claims that Defendant Garcia threatened to get her fired if she reported his harassment. The Court notes that Defendant Garcia reported the violent threats that led to Plaintiff's firing before she ever made any report of harassment.  Even more importantly, without any evidence that the final decision-maker, Defendant Dominguez, had knowledge of the claim of sexual harassment, Plaintiff cannot tie her termination to this alleged threat.  Because Plaintiff has failed to come forward with any evidence that Defendant Garcia played a role in the decision to terminate Plaintiff's employment, the second part of her Equal Protection claim must fail.

The first part of Plaintiff's Equal Protection claim also fails because she cannot prove that Defendant Garcia was her supervisor or that he exercised state authority over her, a prerequisite to liability under 42 U.S.C. § 1983.  *See Noland v. McAdoo*, 39 F.3d 269, 271 (10th Cir. 1994) ("in order to establish the state action necessary to support a 1983 claim, defendant...had to be plaintiff's supervisor or in some other way exercise state authority over her").  *See also Woodward v. City of Worland*, 977 F.2d 1392, 1400-01 (10th Cir. 1992) (no

liability under § 1983 against a co-employee for harassment when the harassment did not involve the use of state authority or position, because such action is a private act of sexual harassment rather than being perpetrated "under color of law," and "[t]he mere fact that all the participants were state employees or that the offending acts occurred during working hours is not enough.").

At the time Plaintiff was hired, and throughout her tenure with the DOT, Defendant Garcia was classified as a "Highway Maintenance Worker Advanced." *See* Affidavit of Defendant Garcia, attached as Ex. 1 to Doc. 71, at 2 ¶ 4; Deposition of Defendant Garcia, attached as Ex. 2 to Doc. 71, at 4:15-16.[5]  At the time Plaintiff was hired on February 14, 2005, and throughout her tenure with DOT, her position title was "Office Clerk, General Operational." Defendant Garcia's motion attempted to demonstrate that no questions of material fact existed regarding whether he supervised Plaintiff or exercised any state control over her.  In doing so, Defendant Garcia presented evidence that he did not have a hand in hiring Plaintiff, that he did not have authority to fire, promote, demote, or otherwise modify Plaintiff's employment circumstances, and that he did not have any authority over Plaintiff's leave or pay.  *See* Defendant's undisputed material facts 3, 7, and 8, Doc. 71 at 5-6.  In his position as a Highway Maintenance Worker Advanced, Defendant Garcia supervised eight employees, but Plaintiff was

---

[5] Defendant Garcia indicated his job title as one of his undisputed material facts in his *Motion for Partial Summary Judgment on Counts II and III of Plaintiff's Complaint*, *see* Doc. 71 at 5, ¶ 4, and supported this fact with record citations.  In her Response to Defendant Garcia's motion, Plaintiff disputed his assertion regarding his title.  *See* Doc. 79 at 4, ¶ 4.  Plaintiff's "dispute" with Defendant Garcia's assertion is due simply to the fact that she "has no knowledge of what Defendant Garcia's position was and cannot stipulate to this fact." *Id.*  Ignorance of a fact is an improper basis on which to dispute a properly supported proposed fact for summary judgment purposes.  If Plaintiff seeks to dispute a fact at the summary judgment stage, she must come forward with specific evidence that creates a question of fact for trial.

not one of them. *See id.* at ¶¶ 5-6. Plaintiff agreed, unequivocally, during her deposition that Defendant Garcia was not her supervisor. *See* Plaintiff's Deposition, attached as Ex. 3 to Doc. 71, at 240:2-4.

In responding to Defendant Garcia's summary judgment motion, however, Plaintiff attempts to dispute what she had previously agreed to in her deposition, contending that "Plaintiff was assigned to Mr. Garcia for the purposes of training only. In this instance, Mr. Garcia became Plaintiff's direct supervisor, but only for the dates and times Plaintiff trained him." Doc. 79 at 4-5, ¶¶ 5-7. In the same deposition in which she testified unequivocally that Defendant Garcia was not her supervisor, Plaintiff spoke of being sent to Las Cruces two times to train Defendant Garcia on how to use the "Share" computer system. *See* Plaintiff's Deposition, attached as Ex. 3 to Doc. 71, at 154:14-156:16. Plaintiff testified that the first time she was sent to conduct training on the Share system was at the behest of her supervisor Chris Holguin, and the second time she was sent to train was on the orders of her supervisor Jimmy McKee. *Id.* At no point when discussing the training that she conducted did Plaintiff claim that Defendant Garcia was her supervisor while she was training him. Plaintiff was offered an opportunity to clarify or expand on the responses that she gave to all deposition questions, and she agreed that she gave full and complete answers to all of counsel's questions, which includes the questions of whether Defendant Garcia was her supervisor, and who her supervisors were when she was conducting training. Only when faced with summary judgement on her Equal Protection claim did Plaintiff contradict her deposition testimony and come forward with the claim that Defendant Garcia was somehow her supervisor during the time that she was sent to train him. However, Plaintiff's attempt to create a question of fact at this stage fails because her

16

claim that Defendant Garcia assumed supervisory authority over her for a brief time is simply an unsupported allegation, conclusory in nature, and is insufficient to defeat a properly supported motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 242, 248 (1986). Without some evidence that Defendant Garcia assumed actual or even apparent authority over Plaintiff, she cannot show that any alleged harassment was perpetrated "under color of state law," and therefore cannot show liability under 42 U.S.C. § 1983. Plaintiff's Claim III against Defendant Garcia in his individual capacity is therefore dismissed.

Plaintiff has also sued Defendants Love and Dominguez, in their individual capacities, for denying her right to Equal Protection pursuant to 42 U.S.C. § 1983 because they "facilitat[ed] the subjecting of the Plaintiff to sexual harassment and support[ed] and encourag[ed] wrongful termination of her employment." Amended Complaint [Doc. 50] at ¶¶ 36-37. Because, as previously addressed, Plaintiff has come forward with no evidence demonstrating wrongful termination, that aspect of her Equal Protection complaint fails.

The other aspect of Plaintiff's Equal Protection claim against Defendants Love and Dominguez, that they facilitated Defendant Garcia's sexual harassment, fails as well. Plaintiff does not contend that she was harassed by either Defendant Love or Defendant Dominguez, that she was harassed by Defendant Garcia at any time after September 19, 2006, or that she made any disclosure of Defendant Garcia's sexual harassment prior to September 19, 2006. *See* Defendants' Undisputed Material Facts 6, 13, and 14, Doc. 73 at 4-5 (admitted by Plaintiff in Doc. 83 at 3). Therefore, Plaintiff does not claim that Defendants allowed Mr. Garcia's harassment to continue after she first reported it. Instead, she claims that Defendants Love and Dominguez "facilitated Garcia's sexual harassment by allowing him to make good on his threat

to have Plaintiff fired in the event she ever told anyone about the sexual harassment." Doc. 83 at 6. Again, assuming that Defendant Garcia threatened to get Plaintiff fired if she reported his harassment, without any evidence that the final decision-maker, Defendant Dominguez, had knowledge of the claim of sexual harassment, Plaintiff cannot tie her termination to this alleged threat, and her Equal Protection claim against Defendants Love and Dominguez must be dismissed.

    C.    <u>Punitive Damages</u>

Plaintiff's Count VIII seeks punitive damages against each individual defendant. Because each of the claims against Defendants in their individual capacities have been dismissed, and the only remaining count (Count I) lies against the State, Count VIII must be dismissed as well.

### **CONCLUSION**

**IT IS THEREFORE ORDERED** that Defendants State of New Mexico, Alvin Dominguez, and Harold Loves' *Motion for Partial Summary Judgment on Plaintiff's Retaliatory Discharge Claims* [Doc. 70]; Defendant Paul Garcia's *Motion for Partial Summary Judgment on Counts II and III of Plaintiff's Complaint* [Doc. 71]; Defendant Paul Garcia's *Motion to Dismiss Count VI of Plaintiff's Complaint* [Doc. 72]; and Defendants State of New Mexico, Alvin Dominguez, and Harold Loves' *Motion for Partial Summary Judgment on Plaintiff's Title VII and 42 U.S.C. § 1983 Claims* [Doc. 73] are all GRANTED.

                                              _____
                                              UNITED STATES DISTRICT JUDGE